# United States Court of Appeals for the Federal Circuit

---

**ELECTRICAL WELFARE TRUST FUND,**
*Plaintiff*

**OPERATING ENGINEERS TRUST FUND OF WASHINGTON, D.C., STONE & MARBLE MASONS OF METROPOLITAN WASHINGTON, D.C. HEALTH AND WELFARE FUND,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1107

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00353-EMR, Judge Eleni M. Roumel.

---

Decided: October 2, 2025

---

JOSEPH H. MELTZER, Kessler Topaz Meltzer & Check, LLP, Radnor, PA, argued for plaintiffs-appellants. Also represented by MELISSA L. YEATES.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also

represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY.

———————————

Before MOORE, *Chief Judge*, STOLL, *Circuit Judge*, and BUMB, *Chief District Judge*.[1]

STOLL, *Circuit Judge*.

Plaintiffs-Appellants[2] brought this action against the United States seeking, among other things, compensation for an alleged Fifth Amendment taking based on mandatory contributions they paid to the Transitional Reinsurance Program as part of the implementation of the Patient Protection and Affordable Care Act of 2010. The U.S. Court of Federal Claims granted the Government's motion for partial summary judgment on the Fifth Amendment takings claim. For the following reasons, we affirm.

BACKGROUND

As part of the Patient Protection and Affordable Care Act of 2010 (ACA), Congress established a risk mitigation program called the Transitional Reinsurance Program (TRP). *See* 42 U.S.C. § 18061. The TRP required certain entities to pay reinsurance contributions to the Department of Health and Human Services for the 2014, 2015, and 2016 benefit years. This obligation applied to the Plaintiffs-Appellants, who made the TRP contributions as required, but later filed suit in the U.S. Court of Federal Claims ("Claims Court") to recover their contributions.

———————————

[1] Honorable Renée Marie Bumb, Chief District Judge, United States District Court for the District of New Jersey, sitting by designation.

[2] The Operating Engineers Trust Fund of Washington, D.C. and the Stone & Marble Masons of Metropolitan Washington, D.C. Health and Welfare Fund.

In their complaint, Plaintiffs-Appellants alleged the TRP contributions they were required to make constituted a taking under the Fifth Amendment. They contended that they possessed "identifiable property interests in specific funds of money protected by the Takings Clause of the Fifth Amendment," namely the "[f]unds held in [their] self-insured health and welfare trust funds." J.A. 120 ¶ 103 (operative complaint).

The Government sought partial summary judgment, arguing that Plaintiffs-Appellants lacked a cognizable property interest in the TRP payments because the payments were not the specifically identifiable funds required for monetary takings liability. Rather, as asserted by the Government, "the requirement to pay TRP contributions imposed only an obligation to pay money." *Elec. Welfare Tr. Fund v. United States*, 166 Fed. Cl. 709, 713 (2023). But Plaintiffs-Appellants pointed out that, as self-insured group health plans, they are required to hold all assets in trust[3] for the sole purpose of providing health and welfare benefits to covered individuals. Plaintiffs-Appellants contended they possessed an identifiable property interest in their payments because the TRP contributions were effectively required to be paid from a specific account based on the requirement to keep their assets in trust.

Addressing the Government's motion, the Claims Court first explained that, "[w]hile one cannot possess a cognizable property interest in money generally, one's property interest in a *specific fund* of money—e.g., the interest or principal of an identified account—is cognizable

---

[3]    29 U.S.C. § 1103(a) (ERISA) ("[A]ll assets of an employee benefit plan shall be held in trust . . . ."); 29 U.S.C. § 186(c)(5)(A) (Taft-Hartley) (assets "are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care").

under the Takings Clause such that government deprivation can amount to a taking." *Elec. Welfare*, 166 Fed. Cl. at 717. (citing *Webb's Fabulous Pharmacies., Inc. v. Beckwith*, 449 U.S. 155, 160–65 (1980)). The court recognized that it "must therefore first identify what, if anything, was the subject of the alleged taking to determine whether the property at issue actually constituted specific funds of money." *Id.* (internal quotation marks and citations omitted).

The Claims Court determined that "[b]ecause the property Plaintiffs allege Defendant took was simply sums of money, annually calculated, rather than specific funds, Plaintiffs ha[d] not identified a property interest appropriated by Defendant that is cognizable under the Takings Clause." *Id.* at 718. The Claims Court rejected both of Plaintiffs-Appellants counterarguments. First, in response to the argument that "each TRP contribution was a specific fund of money in which Plaintiffs had a property interest by virtue of the trust agreements establishing their trust funds," the Claims Court explained that the trust agreements "do not resolve the clear conflict between Plaintiffs' argument that an entity may possess a property interest in a sum of money held within a trust account and binding precedent prohibiting a court from finding a cognizable property interest in money alone." *Id.* at 718–19. The Claims Court also rejected Plaintiffs-Appellants' second argument—that the specific funds are actually Plaintiffs' trust accounts, from which Plaintiffs argue they were effectively required to pay their TRP contributions. *Id.* at 721. First, the court held that this argument had been waived. *Id.* It proceeded to address the merits anyway, rejecting this second argument—for essentially the same reason as the first. The Claims Court explained that the "requirement to pay a sum of money cannot be transformed into a taking of a specific fund merely because such payment may be made from a certain account, as one simply

cannot have a cognizable property interest in money itself." *Id.* at 721–22.

As an alternative reason for ruling in favor of the Government, the Claims Court held that "a government actor only implicates one's property interest in a specific fund when it appropriates the fund *in toto*." *Id.* at 717 (citing *Adams v. United States*, 391 F.3d 1212, 1224–25 (Fed. Cir. 2004)). The Claims Court thus reasoned that no taking occurred because the ACA did not "effect *de facto* appropriations of Plaintiffs' funds *in toto*." *Id.* at 718.

Plaintiffs-Appellants later sought reconsideration of the Claims Court's determination that they had waived the argument that the trust funds themselves were the specific funds at issue, which the Claims Court denied.

Plaintiffs-Appellants appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review "both the [trial court's] grant of summary judgment and all questions of law *de novo*." *Nat'l Austl. Bank v. United States*, 452 F.3d 1321, 1325 (Fed. Cir. 2006). "The nature or scope of a compensable property interest in a takings analysis is a question of law." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013).

Our court has "developed a two-part test to determine whether a taking has in fact occurred." *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). First, "the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment." *Id.* Second, "after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest." *Id.* This appeal involves the first question: whether Plaintiffs-

Appellants have a property interest in the funds used to satisfy their TRP obligations.

As a general principle, in the Fifth Amendment takings context, "[u]nlike real or personal property, money is fungible." *United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989). In certain limited circumstances, however, the appropriation of money can give rise to takings liability— such as in "interest follows principal" cases. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 165 (1998). One such case is *Webb's Fabulous Pharmacies*, where a county appropriated "the interest accruing on an interpleader fund deposited in the registry of the county court." 449 U.S. at 155. The Supreme Court explained that "[t]he usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." *Id.* at 162. Therefore, appropriating the interest generated by the funds was an "appropriation of the beneficial use of the fund . . . analogous to the appropriation of the use of private property." *Id.* at 163–64. In short, the county's retention of the interest that would otherwise belong to the owner of the funds constituted a taking under the Fifth Amendment.

Similarly, in *Phillips*, the Supreme Court explained that the same principle governs when funds were temporarily deposited in an attorney trust account, holding that "the interest income generated by funds held in [Interest on Lawyers' Trust Accounts ('IOLTA')] accounts is the 'private property' of the owner of the principal." 524 U.S. at 172; *see also Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235 (2003) (holding that IOLTA account interest that was transferred to a legal aid fund was taken for a public use).

On the other hand, our precedent recognizes the general principle that "the mere imposition of an obligation to pay money . . . does not give rise to a claim under the

Takings Clause of the Fifth Amendment." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (en banc). In *Commonwealth Edison*, we assessed whether the congressional imposition of "special monetary assessments on domestic utilities for the remediation of environmentally contaminated uranium processing facilities owned by the United States" constituted a Fifth Amendment taking. *Id.* at 1329. We held "that requiring plaintiff Commonwealth Edison Company . . . to contribute to the remediation costs does not constitute a Fifth Amendment taking because the Takings Clause does not apply to legislation requiring the payment of money." *Id.* In so holding, we followed the five justices' view in *Eastern Enterprises* that "regulatory actions requiring the payment of money are not takings." *Id.* at 1339 (citing *E. Enters. v. Apfel,* 524 U.S. 498 (1998)); *see also United States v. Sperry Corp.,* 493 U.S. 52 (1989); *Atlas Corp. v. United States*, 895 F.2d 745 (Fed. Cir. 1990).

As demonstrated by *Sperry*, this principle governs even where the Government deducts money directly rather than requiring it be paid separately. 493 U.S. at 62 n.9. *Sperry* involved legislation to "reimburse[] . . . the United States Government for expenses incurred in connection with the arbitration of claims of United States claimants against Iran . . . and the maintenance of the Security Account." *Id.* at 60. "When the Federal Reserve Bank of New York received Sperry's award [a specific sum of money], it deducted the 2% charge over Sperry's protest, deposited the charge in the Treasury, and paid Sperry the balance of its award." *Id.* at 57. The Supreme Court reasoned that because "money is fungible," "[n]o special constitutional importance attache[d] to the fact that the Government deducted its charge directly from the award rather than requiring Sperry to pay it separately." *Id.* at 62 n.9. Continuing, the Court explained that "[i]t is artificial to view deductions of a percentage of a monetary award as physical appropriations of property." *Id.*

Here, we agree with the Claims Court that, under our precedent, this case involves the mere obligation to pay money. Plaintiffs-Appellants contend they were effectively required to pay the TRP contributions from their trust accounts because "[p]ursuant to federal law . . . self-insured group health plans must hold 100% of their assets in trust; and these assets are held in trust funds for a single purpose—to provide health and welfare benefits to covered workers and their families (e.g., medical, dental, and prescription drug coverage)." Plaintiffs-Appellants' Br. 2. Plaintiffs-Appellants contend they "have a cognizable property interest in their trust funds, which includes the corpus of the trust (i.e., the money they hold)." Plaintiffs-Appellants' Br. 22. Continuing, they assert that because the Government was aware of their obligation to hold assets in trust, this case does not involve a mere obligation to pay money. Plaintiffs-Appellants' Br. 34. We conclude otherwise.

The statutory text here states that Plaintiffs-Appellants, among others, "are required to make payments to an applicable reinsurance entity." 42 U.S.C. § 18061(b)(1)(A). "The statute is indifferent as to how the regulated entity elects to comply or the property it uses to do so." *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring). The separate requirement that Plaintiffs-Appellants must keep their assets in trust does not transform this bare statutory requirement to pay money into a taking because the character of the government action here "neither targets a specific property interest nor depends upon any particular property for the operation of its statutory mechanisms." *Id.* at 543 (Kennedy, J., concurring); *Atlas Corp.*, 895 F.2d at 756 ("Requiring money to be spent is not a taking of property."). For example, Congress is likely aware that many taxpayers will pay their taxes out of their checking account, but that practical reality does not transform an obligation to pay into a taking. We are bound by our unambiguous precedent: "[T]he mere imposition of an

obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." *Commonwealth Edison*, 271 F.3d at 1340.

Plaintiffs-Appellants argue the alleged taking here is distinguishable from *Commonwealth Edison* because "the TRP Contribution in no way represented a fee for service." Plaintiffs-Appellants' Br. 28. But "[g]iven the propriety of the governmental power to regulate, it cannot be said that the Taking[s] Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223 (1986) (explaining that "[i]n *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), [the Court] sustained a statute requiring coal mine operators to compensate former employees disabled by pneumoconiosis, even though the operators had never contracted for such liability, and the employees involved had long since terminated their connection with the industry" (cleaned up)); *see also E. Enters.*, 524 U.S. at 517 (explaining that Eastern was assigned "the obligation for Combined Fund premiums respecting over 1,000 *retired* miners" (emphasis added)). We are thus unpersuaded that the lack of a service provided in exchange for the TRP contributions impacts our analysis.

We are convinced, however, that the Claims Court erred in its alternative holding that "a government actor only implicates one's property interest in a specific fund when it appropriates the fund *in toto*." *Elec. Welfare*, 166 Fed. Cl. at 717 (citing *Adams*, 391 F.3d at 1225). The Claims Court misread our precedent in *Adams* as holding that a taking occurs only when a fund is appropriated *in toto*. There, we held no taking had occurred simply because the sum owed was a mere obligation to pay money, not because the property taken was less than *in toto*. *Adams*, 391 F.3d at 1224–25. The Claims Court's reliance on the "interest follows principal" cases is also misplaced. The Claims Court reasoned that in *Webb's*, *Phillips*, and *Brown* "a government actor identif[ied] a specific type of fund—

e.g., interest earned in IOLTAs—and then appropriate[d] that fund in its entirety." *Elec. Welfare*, 166 Fed. Cl. at 720. But the Supreme Court's reasoning in these cases did not turn on a requirement that the property be taken in its entirety. Indeed, in *Brown*, the Supreme Court explained that "the interest earned in the IOLTA accounts is the private property of the owner of the principal . . . [so the] transfer of the interest . . . here seems more akin to the occupation of a small amount of rooftop space in *Loretto* [*v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)]." *Brown*, 538 U.S. at 235 (internal quotation marks and citation omitted).[4] This reasoning would suggest that appropriating even a portion of the interest can be a taking. As we see no support for the requirement that property be taken *in toto,* we conclude that the court erred in so holding. Such error is harmless, however, as the court properly concluded that the property taken here was simply sums of money.

Finally, we are unpersuaded by Plaintiffs-Appellants' argument that the Claims Court erred in concluding that they waived the argument that they have a property interest in the trust funds, as opposed to the funds used to pay the TRP contributions. Any error in the Claims Court's waiver determination is harmless because the court nevertheless addressed the argument. As the court correctly explained, "Plaintiffs' second argument[] . . . fails" on the merits because the "requirement to pay a sum of money cannot be transformed into a taking of a specific fund

---

[4]    In *Loretto*, New York law required landlords to "permit a cable television company to install its cable facilities upon his property." 458 U.S. at 421. The Supreme Court held this was a taking because when "the government permanently occupies physical property, it effectively destroys" the owner's "rights to possess, use and dispose of it." *Id.* at 435 (quotation marks and citation omitted).

merely because such payment may be made from a certain account, as one simply cannot have a cognizable property interest in money itself." *Elec. Welfare*, 166 Fed. Cl. at 721–22.

## CONCLUSION

We have considered Plaintiffs-Appellants' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

## AFFIRMED

### COSTS

No costs.